UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CORBIN CONROY,<br><br>Defendant. | 5:19-CR-50048-KES<br><br>REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OF PHOTO IDENTIFICATION |

Pending is Defendant's Motion to Suppress Evidence of Photo Identification (Doc. 17). A hearing was held on Tuesday, August 13, 2019. Defendant was personally present and represented by his attorney of record, Thomas E. Harmon V. The Government was represented by the Assistant United States Attorney Benjamin Patterson. Two witnesses testified at the hearing, and four exhibits were received into evidence. Supplemental briefing concluded on October 17, 2019. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Suppress Evidence of Photo Identification (Doc. 17) be denied.

1

**JURISDICTION**

Defendant is charged in an Indictment with Interference with Commerce by Robbery in violation of 18 U.S.C. §§ 1951 and 2; Use and Brandishing of a Firearm During the Commission of a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and Conspiracy to Violate 18 U.S.C. § 924(o). (Doc. 1). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

**FACTUAL BACKGROUND**

The Government alleges that on or about March 17, 2019, Jokers Casino was robbed at gunpoint by Defendants Corbin Conroy and Wesley Dillon. (Doc 1). Mr. Dillon was subsequently arrested and questioned regarding the identity of the man who allegedly asked Mr. Dillon to drive him away from the robbery at Jokers Casino. (Ex. 3). Three separate interviews were conducted by Agent Cook and Detective Harris with Mr. Dillon on March 22, 2018. Id. In the interview, Mr. Dillon, originally unsure of the name of the man who asked him to drive away from the casino, described the individual as a Native American man without facial hair who was "maybe [in his] 40s [or] 50s." Id., Disc 1 at 12:09:42-12:10:11. Mr. Dillon further described the man as having a "big nose" and a tattoo on his hand. Id., Disc 1 at 12:24:03-12:24:17.

Mr. Dillon also stated the man who asked him to drive went by the name "Thunder." Id., Disc 1 at 12:23:01-12:23:14. Law enforcement then showed Mr. Dillon a sequential photographic line up comprised of six photos, one after

another, and asked if any he knew of any of the individuals and if any of them were involved. Id., Disc 1 at 12:51:47-12:51:57. Mr. Dillon initially responded that none of the individuals were present at the casino. Id., Disc 1 at 12:52:47-12:53:12. Upon a second showing of the sequential photographic series, Mr. Dillon stated the individual in the second photo looked familiar but he "knows a lot of people" and ultimately stated the individual in the photo was not involved. Id., Disc 1 at 12:53:18-12:54:09. Mr. Dillon also told law enforcement that he was "pretty sure" he heard someone call "Thunder" by the name of Corby. Id., Disc 1 at 12:57:55-12:58:05. During the interview, Mr. Dillon again confirmed that the man "has to be 40 [to] 50" years old. Id., Disc 1 at 12:59:04-12:59:10. Law enforcement then showed Mr. Dillon a still frame photo from security footage at the casino and asked Mr. Dillon if he believed the man in the photo was between 40 and 50 years of age, to which he agreed. Id., Disc 1 at 12:59:22-12:59:30; (Doc. 49 at p. 43).

 Mr. Dillon was shown a six pack photographic line up and was asked if he recognized any of the individuals as being with him at the casino on the evening in question. (Ex: 3, Disc 2 13:09:41-13:10:06). Mr. Dillon pointed to photo number four, which he positively identified an individual with the first name of Tristan. Id. Law enforcement then showed Mr. Dillon a different one page six pack photographic line up and asked if Corby was in any of the photos. Id., Disc 2 at 15:09:59-15:10:13; (Ex. 2). Initially, Mr. Dillon shook his head "no" but then identified photos number two, three, and four in the six pack photographic line up who he believed to look similar to Corby. (Ex. 3,

3

Disc 2 at 15:10:13-15:10:35. Mr. Dillon stated he had only met Corby two or three times. Id., Disc 2 at 15:10:35-15:10:40. Agent Cook then told Mr. Dillon that he had a hard time believing Mr. Dillon could recognize the man who was in the house when he was arrested but he was not sure if it was the same man he went to the casino with. Id., Disc 2 at 15:15:25-15:15:45.

Mr. Dillon stated, "it's literally either him or somebody else" and attributed his uncertainty to being under the influence of drugs on the evening in question. Id., Disc 2 at 15:15:50-15:15:54. Mr. Dillon then stated he knew Corby because he was introduced to him and Mr. Dillon then, without prompting, tapped on photo number four on the one page document comprising the six pack photographic line up. Id., Disc 2 at 15:16:32-15:16:46. Agent Cook confirmed, "It's that guy right there? Number four?" Id. Mr. Dillon responded in the affirmative was asked to initial next to the photograph where he positively identified the Defendant, Corbin Conroy. Id., Disc 2 at 15:16:43-15:16:56; (Ex. 2). Law enforcement again inquired about the individual Mr. Dillon identified in photograph number four, "He was responsible, he was with you the night of the robbery, and he went inside, and he had a gun, that's accurate?" to which Mr. Dillon confirmed. (Ex 3, Disc 2 at 15:17:15-15:17:24).

**DISCUSSION**

I. **Six Pack Photo Line Up Identification**

   a. **Six Pack Photo Line Up was not Impermissibly Suggestive**

Mr. Conroy requests this court to suppress evidence of photo identification from the six pack photographic line up. (Doc. 17). The Eighth Circuit employs a two-step analysis to determine whether an identification is unreliable. Schawitsch v. Burt, 491 F.3d 798, 803 (8th Cir. 2007). First, the defendant must establish that the photographic line up shown to the witness was "impermissibly suggestive." Id. Second, if the photographic line up was "impermissibly suggestive," then the court inquires "whether under the totality of the circumstances of the case, the suggestive confrontation created a substantial risk of misidentification at trial." Id. "Pared to its essence, the second inquiry is whether the identification is reliable." Graham v. Solem, 728 F.2d 1533, 1541 (8th Cir. 1984). "It is the likelihood of misidentification which violates a defendant's right to due process[.]" Neil v. Biggers, 409 U.S. 188, 381–82 (1972).

The identification procedure is not unnecessarily suggestive "when there are no differences in appearance tending to isolate the accused's photograph." Id. (citing United States v. Mays, 822 F.2d 793, 798 (8th Cir. 1987) (photo array not unduly suggestive where only two persons in the spread had facial hair but all persons had general physical characteristics similar to the defendant)). The defendant must show that the police acted improperly in order to show a due process violation resulting in exclusion. Perry v. New

5

Hampshire, 565 U.S. 228, 242 (2012) ("A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place."). A procedure is not impermissibly suggestive when the officers utilize a photo series and do not suggest that the defendant is the person in a particular picture or suggest that the defendant engaged in wrongdoing. See United States v. Omar, 786 F.3d 1104, 1108–1109 (8th Cir. 2015) (finding photo series not impermissibly suggestive); cf. United States v. Patterson, 20 F.3d 801, 805–06 (8th Cir. 1994) (finding procedure impermissibly suggestive where police showed eyewitnesses a single photograph of the suspect).

If the identification procedure is found not to be unnecessarily suggestive, that is the end of the inquiry. However, if the identification procedure is found to be unnecessarily suggestive, the question becomes "whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." Biggers, 409 U.S. at 199. "Reliability of the eyewitness identification is the linchpin" of the determination whether improper police conduct created a "substantial likelihood of misidentification." Perry, 565 U.S. at 239. The factors to determine reliability include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199-200; Manson v. Brathwaite, 432 U.S. 98, 114 (1977). "In order to show that pretrial identification procedure was unreliable, defendant bears the burden to first establish that the photographic spreads shown to witnesses were 'impermissibly suggestive,' and, second, that under the totality of the circumstances, the suggestive confrontation created a very substantial likelihood of irreparable misidentification." United States v. House, Cr. No. 14-40005-01-KES, 2014 WL 1600405, at ¶2 (D.S.D. April 12, 2014) (citing United States v. Martin, 391 F.3d 949, 952 (8th Cir. 2004)).

In Schawitsch, law enforcement showed a photo array in which the photos "were not perfect matches for [the Defendant]." Schawitsch, 491 F.3d at 800. One witness described the robber as having "hair down to his mid-neck" and none of the witnesses described the robber as having facial hair or wearing glasses. Id. The six photos in the array included photos of individuals in which their use of glasses, facial hair, and hair length varied. Id. The Defendant's photo in the photo array was the only photo that had clear height markings behind him. Id. Law enforcement did not suggest selection of any of the individual photos and did not state whether the robber was present in the photo array. Id. The Court held that where there appeared to be "at least a reasonable effort to harmonize the photographs" the photo array was not impermissibly suggestive. Id. at 803. "Reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as they can vary on any given person at different times." Id.

7

The facts of this case surpass the requirements set forth in Schawitsch. All photos in the six pack photographic line up matched Mr. Dillon's description. This photographic line up shown to Mr. Dillon was black and white and consisted of six Native American men with similar hair color and skin complexions. (Ex. 2). Three of the men were wearing black shirts and the other three men were wearing prison uniforms. Id. All of the men either had short hair or their hair was pulled back into a low pony tail which was barely visible from the front of the photograph. Id. None of the men wore glasses. Id. None of the men had facial hair, with the exception of the fifth photograph, in which the individual had a small amount of facial hair. Id. The background lighting was similar and each individual photo was depicted from the chest up. Id. The photos portrayed in this six pack photographic line up more closely resembled each other than the description provided for the photographic line up in Schawitsch, which the Court held to be permissible.

Furthermore, the conduct of law enforcement in administering the photo line up was not impermissibly suggestive. Mr. Conroy argues that the identification was obtained in a "highly suggestive manner" in which officers were "tapping on the table and saying to Dillon, 'it's that guy right there, #4?'" (Doc 18 at p. 3-4). However, the video surveillance of the interview clearly shows that it was Mr. Dillon, *not law enforcement*, who tapped on the six pack photographic line up. (Ex 3, Disc 2 at 15:16:32-15:16:46.) Law enforcement then responded to Mr. Dillon's identification by confirming, "It's that guy right there? Number four?" Id. Because the procedure was not impermissibly

8

suggestive, the court need not reach the second prong of the Schawitsch analysis. Therefore, no due process violation occurred, and the Motion to Suppress Evidence of Photo Identification resulting from law enforcement's use of the photo array should be denied.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Suppress Evidence of Photo Identification (Doc. 17) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 23rd day of October, 2019.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge